IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MOJO MOBILITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Civil Action No. 2:22-cv-00398 <br><br><br> JURY TRIAL |

**PLAINTIFF MOJO MOBILITY, INC.'S MOTION TO STRIKE
PORTIONS OF JULIA R. ROWE'S REBUTTAL EXPERT REPORT ON DAMAGES**

▬▬▬▬▬▬

PUBLIC VERSION

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Conclusory references to nonparty patents or technology directed to wireless charging—suggesting that the asserted Mojo patents have little value and the Mojo's experts failed to properly apportion—should be struck as lacking a reliable and accepted basis, as unfairly prejudicial and confusing, and as untimely disclosed. ......................................2

    B. Certain alleged comparable licenses or non-infringing alternatives should be struck as not disclosed in Samsung's interrogatory responses and/or opening expert reports. ...........................................6

        1. The Court should strike references to alleged comparable licenses not disclosed in Samsung's interrogatory responses or opening expert reports. ........................................................6

        2. The Court should strike references to alleged NIAs missing from Samsung's interrogatory responses and opening expert reports, and beyond what Mojo's damages expert Mr. Bergman relied on in his opening expert report. ..................................8

    C. References to Qi/WPC (or related licensing policies) should be struck, as no one claims or shows that the asserted patents are standard-essential patents subject to Qi/WCP policies, and thus any reference to Qi/WPC is irrelevant and prejudicially confusing. ......................9

        1. The Court should strike references to Qi/WPC license rates. .........................11

        2. The Court should strike references to LexisNexis rankings of Qi-related patents. ...............................................................................11

    D. Reliance on non-disclosed discussions with Samsung employees should be struck, as any such reliance violates the discovery rules and is inadmissible hearsay. ...........................................................12

    E. Reliance on Baarman's "rebuttal" report should be struck, as Baarman's purported expert opinions are inadmissible as untimely and not the product of any reliable analysis or methodology. .......................13

III. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Bianco v. Globus Med., Inc.*,
 30 F. Supp. 3d 565 (E.D. Tex. 2014) ................................................................................... 12

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
 No. 222CV00343JRGRSP, 2024 WL 1289821 (E.D. Tex. Mar. 26, 2024) .......................... 8

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
 No. 2:22-CV-00125-JRG, 2023 WL 8260866 (E.D. Tex. Nov. 28, 2023) ........................... 5

*Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*,
 No. 2:15-cv-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ............................... 8

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
 879 F.3d 1299 (Fed. Cir. 2018) ............................................................................................ 4

*Geiserman v. MacDonald*,
 893 F.2d 787 (5th Cir. 1990) ............................................................................................... 5

*Orthoflex, Inc. v. ThermoTek, Inc.*,
 986 F. Supp. 2d 776 (N.D. Tex. 2013) ......................................................................... 12, 13

*Smart Path Connections, LLC v. Nokia of Am. Corp.*,
 No. 2:22-CV-0296-JRG-RSP, 2024 WL 1096138 (E.D. Tex. Mar. 13, 2024) ..................... 8

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................................. 5, 7, 10

Fed. R. Civ. P. 37(c)(1) ........................................................................................................ 5, 7, 10

Fed. R. Evid. 401 ....................................................................................................................... 4, 11

Fed. R. Evid. 403 ............................................................................................ 4, 5, 10, 11, 12, 13

Fed. R. Evid. 702 ............................................................................................................. 3, 4, 10, 12

Fed. R. Evid. 801 ................................................................................................................ 3, 11, 12

Fed. R. Evid. 801 ........................................................................................................................ 12

**I.     INTRODUCTION**

The expert report of Julia Rowe—Samsung's damages expert—seeks to sow jury confusion with a morass of untimely, irrelevant, prejudicial opinions lacking reliable principles or methodology. The Court should strike much of Rowe's report and limit her trial testimony. The relief sought here, however, would still allow Rowe's ultimate opinion that Mojo's damages are ▬▬▬▬ assuming infringement and validity. But striking the challenged parts would avoid unfair prejudice and jury confusion.

Rowe's report shares several features with Samsung's other expert reports. Rowe discusses nonspecific patents and other nonspecific wireless-charging technology to suggest that Samsung's damages expert needed to apportion value to these other technologies, that the accused products use these other technologies, or that these other technologies were non-infringing alternatives to Mojo's patents. Yet Rowe, like Samsung's other experts, gives no meaningful analysis to support these prejudicial and confusing themes. And none were timely disclosed in Samsung's interrogatory responses or opening expert reports. These defects doom much of Rowe's report.

Another common feature that Rowe's report shares with Samsung's other reports is its extensive discussion of the Wireless Power Consortium (WPC, a standard-setting organization) and the Qi wireless-charging standard (an interoperability standard for wireless charging promulgated by WPC). Mojo is not a WPC member, and no party has ever claimed that Mojo's asserted patents are standard-essential Qi patents subject to the WPC licensing policy. This is not a WPC/Qi case about licensing policies on standard-essential patents (SEPs); Samsung should not be allowed to try to turn it into an SEP case. The WPC's licensing policies and requirements—and the licensing rates for WPC/Qi SEPs—are irrelevant and would severely prejudice Mojo if presented to the jury, as the jury would be led to believe this is an SEP licensing case. Neither Rowe nor anyone else gives meaningful analysis tying WPC/Qi opinions to Mojo's patents.

The Court should strike several categories of opinions from Rowe's report. First, the Court should strike Rowe's conclusory references to nonparty wireless-charging technology because they lack reliable expert analysis and are irrelevant and prejudicially confusing and were untimely disclosed. Second, the Court should strike Rowe's opinions based on untimely disclosed licenses and alleged non-infringing alternatives because Samsung lacks good cause for its failure to timely disclose these theories and Mojo would be unfairly prejudiced thereby because Mojo's experts could not address these items. Third, the Court should strike Rowe's opinions on the WPC and the Qi standard as irrelevant, unreliable as applied here, and prejudicial. Fourth, the Court should strike Rowe's untimely disclosed statements parroting the hearsay of Samsung employees. And fifth, the Court should strike Rowe's opinions relying on Baarman's inadmissible "rebuttal" report, which itself is untimely and unreliable for the reasons set out by separate motion.

Striking these parts of Rowe's report would eliminate her irrelevant, unreliable, and unfairly prejudicial opinions, while leaving intact her ultimate opinion that damages should be ▮▮▮▮▮. The requested relief would thus help ensure an orderly trial and avoid what otherwise would become an unfairly prejudicial "circus."

## II. ARGUMENT

**A. Conclusory references to nonparty patents or technology directed to wireless charging—suggesting that the asserted Mojo patents have little value and the Mojo's experts failed to properly apportion—should be struck as lacking a reliable and accepted basis, as unfairly prejudicial and confusing, and as untimely disclosed.**

Rowe's report repeatedly implies that the benefits of Mojo's asserted patents, as explained and measured by Mojo's experts, are attributable to many patents of others and untold technology of others. *See, e.g.*, Ex. 1 (Rowe Report) ¶ 370 (stating that "[*Georgia-Pacific*] Factor 13 and the concept of apportionment have a downward impact on the baseline," and discussing technologies of others); *see also* ¶¶ 87, 350. Rowe does this based largely on her "discussions" with Samsung's technical

expert, Dr. Zane, and Samsung's purported wireless-charging expert, Baarman. *See, e.g.*, Ex. 1 (Rowe Report) ¶ 364 (citing Dr. Zane's conclusory opinion that "[t]o the extent that Mojo had made 'some advance over the prior art, it would necessarily be a small incremental advance'").

Samsung's experts including Ms. Rowe refer to these other patents and technology for unfairly prejudicial and confusing purposes including: (1) suggesting that Samsung's accused products practice these other patents rather than the asserted Mojo patents, when in actuality Samsung's experts do not establish that Samsung's accused products practice any other patent on wireless charging; (2) suggesting that the Qi wireless charging standard from WPC is enabled by many patents other than the asserted Mojo patents, when in actuality Samsung's experts do not establish that any other specific patent is embodied in the Qi wireless charging standard; (3) suggesting that other patents directed to wireless charging represent non-infringing alternatives (NIAs) to asserted Mojo patents, when in actuality Samsung's experts do not establish that any other patent is an acceptable non-infringing alternative to any of the asserted claims in the Mojo patents; (4) suggesting that the value of wireless charging in the accused Samsung products comes from patents other than the asserted Mojo patents, when in actuality Samsung's experts do not establish that Samsung's products practice any other patent with respect to wireless charging; and (5) suggesting that other patents directed to wireless charging are valid, when in actuality Samsung's experts do no validity analysis of any patent other than the asserted Mojo patents. Ms. Rowe simply has no basis, let alone an independent basis, for these suggestions, and so she should not be allowed to present them. *See* Fed. R. Evid. 702, 801.

**i.** The Court should strike these opinions as lacking a reliable and accepted basis, and as unfairly prejudicial and confusing. As explained in the motions to strike parts of Dr. Zane's and Mr. Baarman's reports, neither Dr. Zane nor Mr. Baarman have conducted a reliable and acceptable analysis in this regard. For instance, they never identify what specifically they view as the incremental

advance of the asserted patents, or how much of the value of wireless charging should be apportioned to technology other than the asserted patents. Dr. Zane admitted as much in his deposition. Ex. 2, Zane Depo. at 52–54. Without any of that underlying analysis, Rowe's opinion has no reliable and accepted basis. The mere existence of other patents or technology does not require apportionment of the accused products unless it is shown by a reliable and acceptable methodology that some specific piece of their value is attributable to the other patents or technology. *See Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1310 (Fed. Cir. 2018).

Any suggestion by Rowe that the patents or technology of others are responsible for the benefits that Mojo's experts have attributed to the asserted patents should be struck, as her report provides no reliable and acceptable basis for any such suggestions. *See* Fed. R. Evid. 702. Rowe has no expertise to do so, and she has not attempted to do so. Allowing her to make any such suggestion would be unfairly prejudicial and confusing to the jury, creating the false impression that she is a qualified expert on these matters. *See* Fed. R. Evid. 401, 403. Rowe's report inappropriately creates the impression that untold patents and technology of others are used by Samsung in its accused products or represent acceptable non-infringing substitutes and should be credited with the benefits of wireless charging that Mojo's experts opine on with respect to the asserted Mojo patents.

Moreover while Samsung's technical expert Dr. Zane is allowed to discuss at trial the asserted Mojo patents and the remaining asserted prior-art patents per the invalidity contention focusing order, Rowe should not be allowed to, as she offers no reliable and acceptable analysis thereof, and as a non-technical damages expert, she is not qualified to do so. Samsung may argue that it should also be allowed to discuss patents in the ▮▮▮▮ that it identified in its timely interrogatory response as ▮▮▮▮▮▮▮▮▮ with regard to damages. But if Samsung wanted to do this, then it should have identified those other patents alleged to be ▮▮▮▮▮▮▮▮▮▮▮ in its timely interrogatory response (or at least in its opening expert reports, as Samsung has the

4

burden of establishing any such ▇▇▇▇▇▇ but Samsung failed to do so. Samsung may also argue that it should be allowed to discuss some of these other patents with respect to the state-of-the-art. But Samsung's experts have established no valid basis for doing so. And relevance in this regard is outweighed by the substantial unfair prejudice and jury confusion. *See* Fed. R. Evid. 403. Rowe has also offered no reliable and acceptable patent analysis—she merely expressly broad conclusory assertions and views.

**ii.** In addition, none of these untold patents or technology of others were identified by Samsung in its interrogatory responses, despite Mojo's serving multiple interrogatories seeking this information. *See* Ex. 3, Plaintiff's First Set of Interrogatories (Nos. 8–12, 22) (March 30, 2023). Rule 26 requires a party to supplement its interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party fails to supplement or disclose such information, that party is prohibited from using that information "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fifth Circuit weighs four factors in evaluating whether an omission is harmless: "(1) the prejudice to the opposing party of allowing the evidence; (2) the importance of the evidence; (3) the possibility for curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the disclosure requirements." *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG, 2023 WL 8260866, at *2 (E.D. Tex. Nov. 28, 2023) (striking expert opinions relying on a purported comparable license that was not identified in response to an interrogatory); *see Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Samsung's interrogatory responses do not identify the nonparty wireless-charging technologies that Rowe discusses in her report. And, under the Fifth Circuit's four-factor test, this omission is not harmless. First, Samsung's failure to identify these other technologies has prejudiced

Mojo because Mojo cannot take further discovery on them, and its experts cannot opine on them, as Samsung did not address any of this in its opening expert reports. Second, Rowe offers no basis for concluding that these other technologies are even relevant, much less important to Samsung's defense. Third, given the proximity to trial, which is set for August 5, 2024, a continuance would be of little help. And fourth, Samsung has not explained why it failed to identify these other technologies in response to Mojo's interrogatories or its opening expert reports. This is an independent basis on which all of this should be struck.

Thus, the Court should strike the relevant paragraphs of Rowe's report, which include at least: ¶¶ 14, 16, 53, 81, 87, 94, 237, 239–41, 266, 268, 269, 271, 275, 280, 303, 305, 307, 337, 349, 350, 362–70, 376, 392, 436–39, 450–63, 476.

> **B. Certain alleged comparable licenses or non-infringing alternatives should be struck as not disclosed in Samsung's interrogatory responses and/or opening expert reports.**
>
> **1. The Court should strike references to alleged comparable licenses not disclosed in Samsung's interrogatory responses or opening expert reports.**

Rowe relies on ▮▮▮▮▮ not timely disclosed in discovery. Mojo served Samsung interrogatories asking Samsung to identify any alleged comparable licenses. Interrogatory No. 10, for instance, asks for "any agreements that You contend are comparable to a license that You would have taken in a hypothetical negotiation in this case." Ex. 3 (Plaintiff's First Set of Interrogatories (No. 10) (March 30, 2023); *see also id.* (Nos. 9, 12)). ▮▮▮▮▮ Ex. 4 (Defendants' Fourth Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 9, 12) (June 21, 2023)). But Samsung's rebuttal expert reports discuss, for the first time, three more licenses not disclosed in Samsung's interrogatory responses: ▮▮▮▮▮ 2) the VIA LA Wireless Power Royalty Rates, and (3) the Philips Patent Portfolio License. Samsung did not otherwise disclose these licenses in

6

discovery or its opening expert reports as relevant to damages, and thus Mojo's experts had no opportunity to address them.

The Court should strike these licenses and any opinions related to them from Rowe's report as untimely disclosed and prejudicial to Mojo. Rule 26 requires a party to supplement its interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party fails to supplement or disclose such information, that party is prohibited from using that information "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Samsung failed to identify the ███████, VIA LA, and Philips licenses in response to Mojo's interrogatories asking for that information. And, applying the same four-factor harmlessness test as described above, this omission is not harmless. First, Samsung's failure to identify these licenses has prejudiced Mojo because Mojo cannot take further discovery on these licenses, and its experts cannot opine on their alleged comparability. Second, Samsung's timely identification of ███████ ███████████████—but late disclosure of these other three licenses—shows that these licenses are less important to Samsung's case. Third, given the proximity to trial, which is set for August 5, 2024, a continuance would be of little help. And fourth, Samsung has not explained why it failed to identify these licenses in response to Mojo's interrogatories.

Because Samsung failed to disclose these alleged comparable licenses in discovery, and because their late disclosure prejudices Mojo, any expert testimony of Rowe regarding these licenses should be struck, including at least these paragraphs of her report:

- 

- VIA LA Royalty Rates: ¶¶ 12, 426, 451, 457–62; and

7

- Philips Patent Portfolio License: ¶¶ 12, 426, 451–56, and 462.

### 2. The Court should strike references to alleged NIAs missing from Samsung's interrogatory responses and opening expert reports, and beyond what Mojo's damages expert Mr. Bergman relied on in his opening expert report.

Mojo also served Samsung an interrogatory asking Samsung to identify any alleged non-infringing alternatives. Ex. 3, Interrogatory No. 8 (March 30, 2023). Samsung responded, identifying a list of alleged NIAs. Ex. 5, Defendants' Supplemental Response to Interrogatory No. 8 (November 10, 2023); Ex. 6, Defendants' Second Supplemental Response to Interrogatory No. 8 (January 19, 2024). Samsung addressed none of these in an opening expert report. In her rebuttal report, Rowe introduces "wired charging" as a new alleged NIA, which was not disclosed in Samsung's prior responses. Ex. 1 (Rowe Report) ¶ 261. Rowe also discusses Mojo's damages expert Mr. Bergman's discussion (in his opening report) of the alleged NIAs listed in Samsung's interrogatory response. Ex. 1 (Rowe Report) ¶¶ 237–58.

First, because wired charging as an NIA was not included in Samsung's interrogatory responses nor in any Samsung's opening report, it should not be introduced at this late stage. This Court recently held that it is the defendant's "burden to show that an alternative is non-infringing," so that NIAs "should [be] raised in [the defendant's] opening report." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 222CV00343JRGRSP, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024). The Court thus held that "is grounds to exclude this testimony." *Id.*; *see also Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024 WL 1096138, at *4–5 (E.D. Tex. Mar. 13, 2024) (same); *Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 WL 5137401, at *14 (E.D. Tex. Nov. 4, 2017) (applying the Fifth Circuit's four-factor test and striking opinions based on late-disclosed NIAs). Applying the same four-factor test again here, the Court should prohibit references to these new NIAs. First, Mojo is prejudiced because it cannot take

discovery on this undisclosed NIA, and its experts cannot opine on it. Second, Samsung's timely identification of other NIAs and its belated disclosure of this one show that this one is unimportant to Samsung's case. Third, a continuance is not appropriate because of the approaching trial date. And fourth, Samsung has not explained the reason for its late disclosure.

Moreover, Rowe's "rebuttal" of Mr. Bergman's discussion of Samsung's interrogatory response alleged NIAs should be stricken to the extent Mr. Bergman's opinion does not rely on it and Mr. Bergman does not plan to testify on it at trial. This is because Samsung had to include in its opening reports any discussion of any alleged NIAs it wanted to rely on (as explained above), but Samsung failed to do so. While Samsung's experts may rebut any discussion of NIAs at trial by Mr. Bergman to the extent supported by Samsung's expert reports (as that can be considered true rebuttal), Samsung's experts should otherwise be precluded from discussing any NIAs at trial, as that needed to be in Samsung's opening expert reports.

Because Samsung disclosed no NIAs in its opening expert reports, it should not now be allowed to do so when Mojo experts have no chance to reply. Thus, these paragraphs should be struck from Rowe's report: ¶¶ 237–58, 261–64.

> **C. References to Qi/WPC (or related licensing policies) should be struck, as no one claims or shows that the asserted patents are standard-essential patents subject to Qi/WCP policies, and thus any reference to Qi/WPC is irrelevant and prejudicially confusing.**

Rowe makes repeated, irrelevant, and untimely references to the Qi standard, the WPC organization that set the Qi standard, and the WPC licensing guidelines and restrictions on WPC members and their patents. This should not be allowed, as Samsung's experts have no reliable and accepted basis for doing so, any such references go beyond Samsung's timely interrogatory responses, and any such references would be unfairly prejudicial and confusing to the jury. Samsung's experts refer to Qi and the WPC to make irrelevant and prejudicial suggestions that asserted patents are subject to the licensing guidelines and restrictions in the WPC policy with regard

9

to WPC members, when it is undisputed that the WPC policy does not apply to the asserted patents as Mojo is not a WPC member.

Because Samsung's attempts to do so through its experts lacks a reliable and acceptable basis and is not supported by Samsung's timely interrogatory responses (e.g., with regard to damages), or even its opening expert reports, Samsung's experts should be precluded from making any such suggestions, assertions, or discussions. *See* Fed. R. Civ. P. 26(e)(1), 37(c)(1); Fed. R. Evid. 403, 702.

The only references to the Qi standard set by the WPC organization that should be allowed here is with respect to infringement, as it is agreed that many of Samsung's accused products practice the Qi standard. Thus, Mojo's experts are allowed to point to and discuss the Qi standard with regard to infringement by way of the Samsung accused products, and Samsung's experts are allowed to point to and discuss the Qi standard with regard to any assertion of non-infringement by the Samsung accused products as supported by Samsung's expert reports. No other reference to the Qi standard or the WPC standard setting organization should be allowed.

Samsung may argue that it should also be allowed to discuss the WPC licensing guidelines/requirements for damages, as its experts refer to licensing offers from Phillips and VIA LA (each a WPC member) under the WPC licensing guidelines/ requirements on WPC members. Yet none of this was disclosed in Samsung's timely interrogatory responses (or even its opening expert reports), and as such this must be precluded. Mojo's experts have had no opportunity to address this. Moreover, Samsung's experts have not provided a reliable and acceptable analysis in this regard to make a comparison to the asserted Mojo patents, e.g., they have not compared the infringement, breadth, value, strength, or validity of any such patents to the Mojo patents. Dr. Zane admitted this in his deposition. Zane Depo. at 47–48. Regardless, Samsung's failure to disclose any of this in its timely interrogatory responses or opening expert reports precludes Samsung from doing so now.

PUBLIC VERSION

### 1. The Court should strike references to Qi/WPC license rates.

Throughout her report, Rowe points to licensing rates associated with the patents of WPC members purportedly associated with the Qi standard. *See, e.g.,* Ex. 1 (Rowe Report) ¶¶ 148, 426. This is improper because, as noted, everyone agrees that the licensing requirements on WPC members (including the requirement of royalty-free licenses on sub-5-watt receivers and FRAND) do not apply to Mojo or its asserted patents. ███████████████████████████████

███████████████. Any discussions of WPC-member license terms subject to the royalty-free and FRAND requirements of WPC would be unfairly prejudicial and confusing to the jury since these requirements do not apply to the Mojo patents. *See* Fed. R. Evid. 401, 403. Plus, Samsung never identified any of this in its interrogatory responses even though it would be responsive to multiple interrogatories. *See* Ex. 3 (Plaintiff's First Set of Interrogatories (Nos. 10, 11) (March 30, 2023)). Nor did Samsung address this in its opening expert reports. Thus, Mojo's experts have not had a chance to address any of this. All such paragraphs should be struck from Rowe's report, including at least: ¶¶ 138–153, 411, 426, and 450–63.

### 2. The Court should strike references to LexisNexis rankings of Qi-related patents.

In paragraph 369 of Rowe's report, as part of her discussion of the "Apportionment Of Value Specifically Creditable To The Invention," Rowe cites a publication by LexisNexis entitled "Who Leads the Qi Wireless Charging Patent Race?" Rowe then opines that this publication shows that Samsung is highly ranked with regard to "Qi-related patent families" and that Mojo is not ranked at all. Ex. 1 (Rowe Report) ¶ 369.

Rowe's reliance on this publication is misplaced. To start, no foundational evidence shows that the publication or its methodology are reliable—Rowe simply cites to the publication without further explanation. *See* Fed. R. Evid. 401, 403, 801. Moreover, a simple ranking, without more, does not reliably support Rowe's apportionment critique of Mojo's damages expert analysis (Bergman's

analysis). *See* Fed. R. Evid. 702. Yet the ranking risks unfair prejudice to Mojo if used to improperly cast Mojo's technology as less valuable than some unspecified, unidentified, and unexplained technology of Samsung or others. Plus, Samsung never identified any of this in its interrogatory responses even though it would be responsive to multiple interrogatories. *See* Ex. 3 (Plaintiff's First Set of Interrogatories (Nos. 9–12) (March 30, 2023)). Nor did Samsung address this in its opening expert reports. Thus, Mojo's experts have not had a chance to address any of this. At least this part of ¶ 369 should be struck as irrelevant and misleading to the jury. *See* Fed. R. Evid. 403, 702.

**D.     Reliance on non-disclosed discussions with Samsung employees should be struck, as any such reliance violates the discovery rules and is inadmissible hearsay.**

Throughout her report, Rowe relies on interviews with ▇▇▇▇ and ▇▇▇▇; both are Samsung employees. *See, e.g.,* Ex. 1 (Rowe Report) ¶¶ 248, 465. These interviews are hearsay and cannot be used to introduce evidence that is otherwise inadmissible. *Bianco v. Globus Med., Inc.,* 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014); Fed. R. Evid. 801. Thus, these paragraphs should be struck from Rowe's report:

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Rowe does this same thing with purported discussions with Samsung's technical expert Dr. Zane, and with Mr. Baarman as well. Rowe should not be allowed to be the mouthpiece for Samsung's fact witnesses or other experts. Rowe has not applied any of her own expertise to these facts or opinions and instead is just parroting back what she has been told by ▇▇▇▇ Dr. Zane, and Mr. Baarman. *See Orthoflex, Inc. v. ThermoTek, Inc.,* 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although

12

in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him"). The Court should exclude at least these parts of Dr. Rowe's report: ¶¶ 465, 469 ████, ¶ 248 ████, ¶¶ 16, 19, 51, 53, 59, 63–64, 68–69, 76, 81–84, 87, 90, 100, 137, 139, 151–52, 159–65, 169, 177, 183–87, 189–90, 195, 197, 208–11, 219, 237–71, 275, 280, 287, 296, 303, 305, 311–12, 337, 349–50, 356, 364, 392, 403, 436, 438, 446, 451, 465, 468–70 (Dr. Zane), and ¶¶ 87, 240, 266, 268, 271, 275, 280, 303, 305, 342, 350, 356, 411, 420, 421, 436, 438, 451, 452, 457, and 463 (Mr. Baarman).

### E. Reliance on Baarman's "rebuttal" report should be struck, as Baarman's purported expert opinions are inadmissible as untimely and not the product of any reliable analysis or methodology.

Throughout her report, Rowe bases her opinions on the opinions of Baarman, a purported Samsung expert. But Baarman's "opinions" are not the product of any reliable analysis, they are simply lay witness testimony. *See* Motion to Strike Baarman. And even if he is an expert, Baarman's opinions should have been submitted as part of Samsung's opening reports, rather than Samsung's rebuttal reports. *Id.* Mojo had no chance to take discovery on Baarman's expert report, nor do Mojo's experts have a chance to rebut Baarman.

Thus, these paragraphs of Rowe's report relying on Baarman's purported expert opinion should be struck as unreliable and prejudicially confusing to the jury: ¶¶ 87, 88, 90, 91, 92, 139, 240, 266, 268, 271 (re: cites to Baarman), 275, 280, 303, 305, 342, 350, 356, 411, 420, 421, 436, 437, 438, 451, 452, 457, 463. *See* Fed. R. Evid. 403.

## III. CONCLUSION

The Court should strike the challenged parts of Rowe's rebuttal report described in this motion, and order that neither Samsung nor Rowe refer to any such stricken material during trial.

April 29, 2024                                   Respectfully submitted,

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Phone: (903) 923-9000
Fax: (903) 923-9099

Christopher P. McNett (*PHV*)
cmcnett@McKoolSmith.com
MCKOOL SMITH, P.C.
1999 K Street NW, Suite 600
Washington, D.C. 20006
Phone: (202) 370-8300
Fax: (202) 370-8344

*/s/ Steven J. Pollinger*
Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
Charles E. Fowler, Jr.
Texas State Bar No. 24083014
cfowler@McKoolSmith.com
George T. Fishback, Jr.
Texas State Bar No. 24120823
gfishback@McKoolSmith.com
Kenneth M. Scott
Texas State Bar No. 24137497
kscott@mckoolsmith.com
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, Texas 78701
Phone: (512) 692-8700
Fax: (512) 692-8744

Ryan McBeth
Texas State Bar No. 24078955
rmcbeth@mckoolsmith.com
Archis "Neil" Ozarkar
Texas State Bar. 24079096
nozarkar@mckoolsmith.com
MCKOOL SMITH, P.C.
600 Travis St., Suite 7000
Houston, Texas 77002
Phone: (713) 485-7300
Fax: (713) 485-7344

**ATTORNEYS FOR PLAINTIFF MOJO MOBILITY, INC.**

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of this document on all counsel of record by email on April 29, 2024.

*/s/ Ryan McBeth*
Ryan McBeth

## CERTIFICATE OF CONFERENCE

I certify that, under Local Rule CV-7(h) and (i), counsel for the plaintiff met and conferred with counsel for the defendants on April 29, 2024, in a good-faith attempt to resolve the matters raised by this motion. No agreement could be reached. The defendants stated that they oppose the relief requested by this motion. The parties' discussions ended in an impasse and leave open issues for the Court to resolve.

*/s/ Ryan McBeth*
Ryan McBeth

## CERTIFICATE OF AUTHORIZATION TO SEAL

I certify that, under the protective order, this document contains confidential information. Thus, this document is to be filed under seal.

*/s/ Ryan McBeth*
Ryan McBeth
