IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOJO MOBILITY, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CASE NO. 2:22-CV-00398-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| *Defendants*. | § § | |

### MEMORANDUM ORDER

Before the Court is the Motion to Strike and Exclude the Expert Report and Testimony of David Baarman filed by Mojo Mobility, Inc. **Dkt. No. 87**; Dkt. No. 138 (reply in support). Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. opposed the Motion with a response and sur-reply. Dkt. No. 109; Dkt. No. 162. For the reasons discussed below, Mojo's Motion is **GRANTED** to the limited extent provided below.

### I.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making

Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. BACKGROUND

Samsung retained Mr. Baarman as an expert in this case who in turn provided a report dated April 8, 2024. Mr. Baarman's Report discusses his background in the development of wireless charging technologies and later business efforts in the intellectual property licensing and monetization fields. Baarman Report ¶¶ 7–17. Section III of Baarman's Report discusses the Qi Standard of the Wireless Power Consortium (WPC), discussing the background and creation of the standard, and Baarman's opinion regarding the "primary driver of value for wireless charging devices that operate on the Qi Standard." *Id.* ¶¶ 18–30. Section IV discussed the "WPC's IPR policy" which governs required royalty schemes and rates for WPC members. *Id.* ¶¶ 31–36. Section V discusses "four main ways to create value in wireless charging IP" by outlining the four ways and evaluating their merits. *Id.* ¶¶ 37–44. Section VI discusses license rates involving companies like Philips, VIA LA, and Powermat, and concludes that "a license to a patent portfolio from a single patentee like Mojo would not be sufficient to practice the Qi standard." *Id.* ¶¶ 45–53. Section VII identifies six functionalities that Mojo's patents allegedly enable, and discusses how it is Baarman's opinion that these functionalities were known in the art. *Id.* ¶¶ 54–59.

## III. ANALYSIS

### A. Timeliness of Baarman's Report

Mojo asserts that Mr. Baarman's report is not a proper rebuttal report and therefore was untimely served at the rebuttal export report deadline. Dkt. No. 87 at 7–8. Mojo asserts that the report is not proper rebuttal testimony due to not specifically referring to Mojo's opening reports. *Id.* (citing *Ceats, Inc. v. Ticketnetwork, Inc. et al.*, 2018 WL 453732, at *3 (E.D. Tex. 2018)). Mojo relies on Baarman's representation that he did not review the opening reports as further evidence that the report is not rebuttal. Dkt. No. 87 at 7. Further, Mojo asserts that service after other reports

is insufficient to qualify a report as rebuttal and that since Mojo did not designate an expert on topics within Baarman's report the report is not rebuttal. Dkt. No. 87 at 7, 8.

Samsung responds that Baarman's Report is properly considered as a rebuttal report. Dkt. No. 109 at 7 (citing *Geodynamics, Inc. v. Dynaenergetics US, Inc.*, 2018 WL 4732419 (E.D. Tex. 2018)). Samsung contends that Mojo's opening expert reports attribute value to Mojo's patents that is actually attributable to Qi Standard compliant devices. Dkt. No. 109 at 7, 8–9. To that end, Samsung asserts that Baarman's testimony is "run-of-the-mill rebuttal expert testimony" addressing apportionment. Dkt. No. 109 at 8. Finally, Samsung asserts that Baarman's inability to review Mojo's expert reports is an insufficient reason to strike. Dkt. No. 109 at 9–10 (citing *Poly-America, Inc. v. Serrot Int'l, Inc.*, 2002 WL 1996561, at *15 (N.D. Tex. 2002) (Fitzwater, J.)).

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) allows for the designation of a rebuttal expert witness "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C) . . . ." "The scope of rebuttal testimony is ordinarily a matter to be left to the sound discretion of the trial judge." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991) (quoting *United States v. Winkle*, 587 F.2d 705, 712 (5th Cir. 1979), *cert. denied*, 444 U.S. 827, 100 (1979) ). "A 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006)). Other courts in this District have adopted a three-question consideration for further evaluating whether a report is properly categorized as rebuttal:

> First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

4

*Gibson Brands Inc. v. Armadillo Distribution Enterprises, Inc.*, 2021 WL 231764, at *1 (E.D. Tex. 2021) (Mazzant, J.) (quoting *Poly-America*, 2002 WL 1996561, at *15); *Zoch v. Daimler, A.G.*, 2018 WL 4599674, at *1–2 (E.D. Tex. 2018) (Mazzant, J.) (quoting *Poly-America*, 2002 WL 1996561, at *15). The Court now uses these questions to aid its analysis.

First, for most of the report, Mr. Baarman does not explicitly identify which evidence the rebuttal report purports to contradict or rebut. *See* Baarman Report ¶¶ 1–52, 60. The only sections that do identify a specific position taken by Mojo are Section VII, where Baarman rebuts six functionalities he believes were known in the art, and briefly in the conclusion of Section VI. *Id.* ¶¶ 53, 54–59. However, the sections that do not explicitly identify what they purport to rebut are at least facially focused on background information that reinforces Baarman's rebutting opinions.

Second, Samsung's opposition briefing identifies areas in Mojo's reports that demonstrate that Baarman's report is on the same subject matter as opening reports from Dr. Reed-Arthurs, Mr. Bergman, and Dr. Ricketts. Dkt. No. 109 at 8–9. Samsung asserts generally that the subject matter is the Qi Standard, the history of developing wireless charging technology, and the effect of the Qi Standard on a damages evaluation. *Id.* Upon review of the opening reports and Baarman's Report, the Court finds that Baarman's Report is at least facially on the same subject matter as topics discussed in several of Mojo's opening reports.

Third, Mr. Baarman's double duty as fact and expert witness makes it difficult to find that his report is solely intended to contradict or rebut evidence provided in the opening reports of Mojo's experts. However, overlap between testimony Baarman intends to give as a fact witness and similar factual testimony used to support his rebuttal opinions is not sufficient grounds to label the report not rebuttal. This is especially true where Baarman's Report "explains, repels, counteracts, or disproves" Mojo's evidence. *CEATS*, 2:15-CV-01470-JRG-RSP, 2018 WL

453732, at *3 (E.D. Tex. 2018); *see Gibson Brands Inc.*, 2021 WL 231764, at *3 (E.D. Tex. 2021) (Mazzant, J.). It must be remembered that the purpose of Rule 26(a)(2) is to give notice of *opinion* testimony.

Finally, Mojo's assertion that Baarman's lack of review of the initial reports should drive determination of its status as a rebuttal report is unpersuasive. While the consideration could speak to Mr. Baarman's credibility or weigh on *Daubert* determinations, it is not an independent reason to find Baarman's Report is not categorically rebuttal.

In conclusion, the Court finds that Baarman's Report is a rebuttal report and was timely as served on the rebuttal expert report deadline. The Court turns to Mojo's objections to portions of Baarman's Report.

### B. Mojo's Objections to Baarman's "[Q]uasi-invalidity" Opinions (Baarman Report ¶¶ 54–59)

Mojo asserts that this portion of Baarman's Report should be stricken for (1) defying invalidity law, (2) due to Baarman's opinions lacking reliable principles or methods, and (3) improper discussion of undisclosed prior-art references. Dkt. No. 87 at 10, 10–13.

Mojo asserts that Baarman's assertion that certain functionalities were known in the prior art is an improper invalidity opinion since Baarman "has done no obviousness analysis, and his testimony on what was allegedly known in the art would improperly suggest invalidity to the jury without meeting the legal requirements." Dkt. No. 87 at 11. Further, Mojo asserts that the overlapping discussion of the prior-art reference Sagoo between Baarman and Samsung's invalidity expert Dr. Zane could confuse the jury. *Id.* Samsung responds that Baarman's Report just "describes the state of the art . . . without opining on invalidity." Dkt. No. 109 at 11–12. Further, Samsung contends that "Mojo opened the door . . . by broadly characterizing its patents as enabling generic known features" and Baarman's rebuttal of those characterizations is relevant

to *Georgia-Pacific* factors 9 and 13. *Id.* at 12.

The Court finds that Mr. Baarman's report does not go beyond describing his opinions on the state of the art. Baarman's Report uses similar structure to discuss what he believes was already known in the art for the six identified functionalities followed by examples in the form of patents. This testimony is reasonably related to apportionment of damages. The discussion of certain unelected prior-art references (as opposed to their introduction as exhibits) does not support striking the opinions. *See United Services Automobile Association v. PNC Bank N.A.*, 2022 WL 1300832, at *5 (E.D. Tex. 2022) (citing *Arthrex, Inc. v. Smith & Nephew*, No. 2:15-cv-1047-RSP, 2016 WL 4211504 at *——, 2016 U.S. Dist. LEXIS 203781 *9-10 (E.D. Tex. Nov. 30, 2016)). Further, the Court does not find that Mr. Baarman has engaged in impermissible or unreliable methodology such that striking the opinions would be appropriate. Mojo's disputes and concerns can be sufficiently addressed through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.

### C. Mojo's Objections to Baarman's "[Q]uasi-damages" Opinions (Baarman Report ¶¶ 45–53)

First, Mojo asserts that "under the guise of evaluating certain patents, patent pools, patent portfolios, and licensing rates, Baarman performs a quasi-comparable-license analysis to devalue Mojo's patents in front of the jury." Dkt. No. 87 at 13. Mojo points to Baarman's discussion of the Philips, VIA LA, and Powermat licenses, and Baarman's conclusion that "[i]t is my opinion that a license to a patent portfolio from a single patentee like Mojo would not be sufficient to practice the Qi standard." Dkt. No. 87 at 13–14 (quoting Baarman Report ¶¶ 46, 48–49, 53). Mojo contends that Baarman's report is an "implication . . . that Samsung's accused products practice other patents or that Mojo's patents are worth no more than the pools and portfolios he just discussed" and makes the analytical jump that the asserted impression of Baarman's concluding sentence

establishes that the overall opinions are impermissible, unreliable damages testimony. Dkt. No. 87 at 14.

Upon review of the disputed paragraphs, the Court does not find that Mr. Baarman has engaged in impermissible or unreliable damages testimony. Mojo's argument relies on an impression it contends the paragraphs create, which is not a basis to strike portions of an expert report that will ultimately not be given to the jury itself. Rather, Mojo's concerns generated from these impressions can be adequately handled through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. Further, the Court does not find that Mr. Baarman engages in damages analysis in Section VI of his report. Nor does Mojo provide any actual reasons the report applies unreliable principles or methodologies outside of a bare statement and citation regarding scope of competence. Mr. Baarman has been set out as a licensing expert and Mojo does not dispute his qualifications in this regard.

Alternatively, Mojo asserts that "Samsung failed to disclose that it would rely on the VIA LA rates, the Powermat rates, and the Phillips rates in its damages case." Dkt. No. 87 at 14 (referencing 87-12 ("Defendants' Fourth Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 9, 10, 12)"). Samsung responds that Mojo's interrogatories were "limited to license offers made to or by Samsung" and that the three disputed licenses as "[p]ublicly advertised licenses" were outside the scope. Dkt. No. 109 at 15. Samsung alternatively contends that even if the licenses were within the scope of the interrogatories, Mojo failed to file a motion to compel on the subject. Dkt. No. 109 at 15 (citing *PerdiemCo, LLC v. Industrack LLC*, 2016 WL 8135383, at *2 (E.D. Tex. 2016)). Samsung further argues in reply that the relied upon evidence are not licenses, but publicly offered rates. Dkt. No. 162 at 5, 5 n.2.

The Court finds that regardless of how the relied upon evidence is characterized, Samsung

has not explained why the evidence was not subject to Rule 26(a) and does not contend that the evidence was otherwise disclosed. Despite Samsung's insistence that the relied upon rates are not licenses, failure to produce the evidence relied upon by Mr. Baarman warrants Rule 37(c)(1) preclusion. Accordingly, the portions of Mr. Baarman's report which relies on the Powermat, VIA LA, and Philips licensing rates are hereby stricken.

Second, Mojo asserts that paragraphs discussing the "four main ways to create value in wireless charging IP" should be stricken due to irrelevance, potential jury confusion, and otherwise not applying reliable methodology. Dkt. No. 87 at 15.

Mojo's bare recitation of objections to the disputed paragraphs is not persuasive regarding reliability. Further, the objection is a vestige of the dispute regarding explicit disclosure of what the report is rebutting discussed above. *See supra* Section III(A). Upon review of the paragraphs, the Court finds that the report engages in permissible methodology and has not otherwise been proven to be unreliable such that exclusion is appropriate.

Third, Mojo asserts Mr. Baarman should be prohibited from "testifying about the Qi standard or WPC licensing requirements." Dkt. No. 87 at 15. Mojo contends that Mr. Baarman's discussion of the standards was not disclosed, but as support for that assertion then turns to contending that the standards are not relevant as Mojo is not a member of the WPC.[1] *Id.* at 16. Mojo extrapolates further that due to Mojo not being a member of the WPC any discussions of WPC licensing schemes in any capacity is irrelevant. Dkt. No. 87 at 16–17. Samsung responds that Mr. Baarman's testimony is directed towards providing "context to the wireless charging license rates he discussed by explaining the impact of the guidelines of those rates." Dkt. No. 109

---

[1] Mojo also asserts generally, and without connection to any opinion provided by Mr. Baarman, that the Qi standard should only be discussed with regards to infringement by anyone in this case. Dkt. No. 87 at 16. The Court declines to enact such a broad and untethered restriction in the midst of an analysis regarding a specific witness.

at 16.

The Court does not exclude Mr. Baarman's discussion of the Qi standard, nor does the Court find that discussion of the WPC licensing rates is wholly irrelevant. While the Parties do not dispute that Mojo is not a member of the WPC, the WPC licensing rates are relevant to discussions regarding comparable licenses and other related damages topics. Foreclosing discussion of the WPC licensing practices solely because Mojo is not a member is insufficient on relevance grounds. Further, the instant motion to strike is not the appropriate avenue to seek exclusion of all discussion of WPC licensing schemes.

### D.  Discussion of "any patents at trial"

Mojo asserts broadly that Samsung's experts should not be allowed to refer to patents that "go beyond the prior art focusing order as well as Samsung's interrogatory responses on damages." Dkt. No. 87 at 17. Mojo further outlines six "unfairly prejudicial and confusing purposes" that Samsung's experts purportedly suggest. Dkt. No. 87 at 17–18.

Mojo's broad request unconnected to any specific witness testimony, let alone any reference to Mr. Baarman's report, would be improperly addressed in the context of this order and otherwise does not identify what portions of any report should be stricken for these reasons.

### E.  Demonstrative Dispute (Baarman Report ¶ 60)

Mojo's Motion requests prohibiting Baarman from "demonstrating unproduced devices" based on Mr. Baarman's concluding paragraph which in relevant part states that Mr. Baarman anticipates using demonstratives and "making demonstrations utilizing some of the physical devices described in this report at trial." Dkt. No. 87 at 19 (quoting Baarman Report ¶ 60). Mojo objects on the basis that "neither Baarman nor Samsung have ever produced . . . a single device related to Baarman's proposed testimony" and requests striking any reference to "unproduced

10

devices" without indicating if any such references are present in Baarman's report. *Id.* at 19. Samsung responds that Mr. Baarman referenced the "Samsung Droid Charge" device and indicates that the device was produced. Dkt. No. 109 at 18 (referencing Baarman Report ¶ 29). Mojo replies that Mr. Baarman should be barred from making "device presentations" at trial based in part on the fact that the Samsung Droid Charge reference was provided as background and lacks expert analysis on the device to present to the jury. Dkt. No. 138 at 7. Samsung in sur-reply disputes whether analysis is necessary to rely on a device as a demonstrative. Dkt. No. 162 at 7.

Both parties lost the thread of the dispute during the course of the briefing. The Court finds that the briefing is lacking a dispute on which it can rule within the context of a motion to strike. Any consideration of the permissibility of demonstratives may be addressed through the procedure set forth in the pretrial order.

## IV.   CONCLUSION

For the reasons discussed above, Mojo's Motion to Strike and Exclude the Expert Report and Testimony of David Baarman (Dkt. No. 87) is granted as to any reliance on the previously undisclosed Powermat, VIA LA, and Philips rates, and otherwise denied.

**SIGNED this 22nd day of July, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

11