IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOJO MOBILITY, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:22-CV-00398-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. | § | |
| and SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court are several motions to strike filed by Plaintiff Mojo Mobility, Inc. First, the Motion to Strike Portions of Dr. Regan Zane's Opening and Rebuttal Expert Report. **Dkt. No. 90**; *infra* Section II. Second, the Motion to Strike Portions of Dr. Lynne J. Weber's Rebuttal Expert Report on Survey Evidence. **Dkt. No. 89**; *infra* Section III. Third, the Motion to Strike Portions of Julia R. Rowe's Rebuttal Expert Report on Damages. **Dkt. No. 88**; *infra* Section IV.

### I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making

1

Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. MOTION TO STRIKE PORTIONS OF DR. REGAN ZANE'S OPENING AND REBUTTAL EXPERT REPORT (DKT. NO. 90)

Before the Court is the Motion to Strike Portions of Dr. Regan Zane's Opening and Rebuttal Expert Report filed by Mojo Mobility, Inc. **Dkt. No. 90**; Dkt. No. 141 (reply in support). Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. opposed the Motion with a response and sur-reply. Dkt. No. 113; Dkt. No. 166. For the reasons discussed below, Mojo's Motion is **GRANTED** to the extent provided in Sections II (C) and (F).

### A. Objections to Discussion of Unelected Patents

First, Mojo asserts broadly that Samsung's experts should not be allowed to refer to patents that "go beyond the prior art focusing order[.]" Dkt. No. 90 at 7. Samsung responds that the sections of Dr. Zane's report not related to technical comparability contain "permissible expert opinion on the state of the art, the background of the technology, and the knowledge of a POSITA at the time of the alleged invention[.]" Dkt. No. 113 at 7. Further, Samsung asserts that use of non-elected prior art in the "Technical Comparability of Licenses" section is permissible to show "technical comparability of Samsung's licenses[.]" Dkt. No. 113 at 7–8.

Upon review of the disputed paragraphs (Dkt. No. 90-14 at 2–5), the Court finds that Dr. Zane does not engage in impermissible use of the unelected prior art references. *See Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, 2015 WL 7303352, at *2 (E.D. Tex. 2015); *United Servs' Auto. Ass'n v. PNC Bank N.A.*, 2022 WL 1300832, at *5 (E.D. Tex. 2022).

Second, Mojo outlines five "unfairly prejudicial and confusing purposes" that Dr. Zane purportedly suggests in his reports and that are relied upon by Samsung's experts Ms. Rowe and Dr. Weber. Dkt. No. 90 at 6–7 (referencing 90-14 at 1–4 for the disputed paragraphs). Mojo's broad exclusion of four pages of references is unpersuasive where the concerns regarding what the evidence "suggests" can be adequately addressed through vigorous cross-examination,

3

presentation of contrary evidence, and careful instruction on the burden of proof.

Third, Mojo asserts that "Dr. Zane's reports [set] forth no reliable and acceptable analysis of any patent used in licensing[.]" Dkt. No. 90 at 7 (referencing Dkt. No. 90-8 "Transcript of Zane Depo."). Samsung disputes Mojo's characterization of the deposition and responds that Dr. Zane's analysis is reliable. Dkt. No. 113 at 8, 9.

The Court is unpersuaded by Mojo's broad assertion that Dr. Zane's testimony is unreliable or unacceptable. To the extent Mojo believes that Dr. Zane has contradicted his report, the proper forum for exploring those disputes is before the jury through vigorous cross-examination. Absent any other argument demonstrating how Dr. Zane has engaged in unreliable analysis or methodology, the Court denies Mojo's request for exclusion based on a blanket recitation of Rule 403.

### B.  Translation of Su

Mojo asserts that reliance on a "new translation" of the Su Reference, provided after the original machine translation, is impermissible pursuant to P.R. 3-4(b). Dkt. No. 90 at 7–8. Mojo contends that the original translation was incomplete since it "did not include any translation of the figures in Su." *Id.* at 8. Mojo points to translation of figures 5 and 7, and a difference in title translations to demonstrate that the new translation, provided before the deadline for fact discovery, "is prejudicial to Mojo and contrary to the Patent Rules." *Id.* Samsung responds that the machine translation included detailed descriptions of figures 5 and 7 and the substance of Dr. Zane's reliance on Su was disclosed in Samsung's invalidity contentions. Dkt. No. 113 at 9–10. Further, Samsung asserts that providing a certified translation after final election of prior art does not violate P.R. 3-4(b). *Id.* at 10. Samsung also contends that while the phrasing is different in the translations the technical substance has not changed. *Id.* at 11.

4

Patent Rule 3-4(b) provides: "A copy of each item of prior art identified pursuant to P. R. 3-3(a) which does not appear in the file history of the patent(s) at issue. To the extent any such item is not in English, an English translation of the portion(s) relied upon must be produced." The Court does not find that Samsung violated 3-4(b) by providing a certified translation before the end of discovery. First, a machine translation was provided to Mojo with the invalidity contentions satisfying the rule. Second, Mojo has not articulated any actual prejudice from the differences between the certified translation and machine translation. The Court cannot conclude that a timely disclosed translation which does not materially alter the asserted contentions is prejudicial due to differences in translation that do not affect the substance of the reference.

### C. Undisclosed Comparable Licenses and Non-infringing Alternatives

First, Mojo repeats its assertion made across many of its motions to strike that the Powermat, VIA LA, and Phillips licensing rates relied upon were not timely disclosed. Dkt. No. 90 at 9–10. Samsung repeats its response that the relied upon licensing rates were not subject to the asserted interrogatories.[1] Dkt. No. 113 at 12–13.

The Court finds that regardless of how the relied upon evidence is characterized, Samsung has not explained why the evidence was not subject to Rule 26(a) and does not contend that the evidence was otherwise disclosed. Despite Samsung's insistence that the relied upon rates are not licenses, failure to produce the evidence relied upon by Dr. Zane warrants Rule 37(c)(1) preclusion. Accordingly, the portions of Dr. Zane's report which relies on the Powermat, VIA LA, and Philips licensing rates are stricken.

Second, Mojo asserts that Dr. Zane discussed non-infringing alternatives in his rebuttal

---

[1] Samsung also asserts in their response that the disputed evidence was produced "before the close of fact discovery" but does not provide any support for this statement. Dkt. No. 113 at 12. Further, Samsung does not rely on this opposition in its reply, only the assertion that the evidence was not subject to the interrogatories. Dkt. No. 141 at 5–6.

report that were not in his opening report. Dkt. No. 90 at 11 (referencing Dr. Zane's Rebuttal Report ¶¶ 833–842). Samsung responds that discussion of "wired charging" as a NIA was proper rebuttal testimony for Mojo's expert Mr. Bergman and disputes Mojo's asserted requirement to provide comparability opinions in the opening report. Dkt. No. 113 at 12–13. After review of the disputed paragraphs, the Court finds that Dr. Zane has permissibly relied on NIA opinions in his rebuttal report.

### D. Reference to the Qi Standard and the WPC

Mojo asserts that "Dr. Zane makes repeated irrelevant and untimely references to the Qi standard, the WPC organization that set the Qi standard, and the WPC licensing guidelines and restrictions on WPC members." Dkt. No. 90 at 11. Sifting through Mojo's repeated, blanket assertions that the opinions are unreliable and irrelevant, the Court determines that Mojo's only definitively asserted basis for this exclusion is that Mojo is not a member of the WPC. Dkt. No. 90 at 11–13.

The Court does not exclude Dr. Zane's discussion of the Qi standard, nor does the Court find that discussion of the WPC licensing rates is wholly irrelevant. While the Parties agree that Mojo is not a member of the WPC, the WPC licensing rates are relevant to discussions regarding comparable licenses and other related damages topics. Foreclosing discussion of the WPC licensing practices solely because Mojo is not a member is insufficient on relevance grounds.

### E. "Dr. Zane's loose assertion" (Opening Report ¶ 2178)

Paragraph 2178 appears in Section "XII. Alleged Secondary Considerations" of Dr. Zane's opening report and in relevant part states:

> Even if I were to assume that Mojo made some advance over the prior art, it would necessarily be a small incremental advance, and I am not aware of any information related to the particular aspects of wireless charging, if any, that might influence purchasing decisions and would show such a nexus.

6

Dr. Zane's Opening Report ¶ 2178. Mojo objects to the characterization of "incremental advance" as a "loose assertion" that is "unreliable, irrelevant, and would be unfairly prejudicial and confusing to a jury." Dkt. No. 90 at 13. Mojo's support for this objection is that Dr. Zane's report does not provide analysis of this point and "established no reliable basis for these characterizations." *Id.*

Reading the statement within the full context of the cited paragraph, the Court finds that sufficient analysis or reference to analysis conducted in other parts of the report is provided. Rather Mojo has identified a dispute regarding the conclusions Dr. Zane reaches which is not a basis for finding that Dr. Zane has engaged in impermissible methodology.

### F.  Improper Use of Unelected Prior Art as Invalidity References

Mojo asserts that Dr. Zane's reports use unelected prior art references "as if they were properly disclosed invalidity references selected per the Focusing Order." Dkt. No. 90 at 14, 16. Mojo contends that while the references could be admissible as state-of-the-art illustrations, the risk of confusion regarding the purpose of the references supports exclusion.[2] *Id.* at 14.

Mojo contends that Rebuttal Report ¶ 55 is exemplary of the improper usage. Dkt. No. 90 at 15. The Court finds that the references used are not outside the scope of general technological background or state of the art as they appear within the "technology background" sections of the opening and rebuttal report. *See* Opening Report ¶¶ 37–103; Rebuttal Report ¶¶ 33–112. Dr. Zane's use of organizing headings based on technological concepts, while those concepts may overlap with the subject matter in the Asserted Claims, is not a reason to find that the references are used in connection with specific limitations.

---

[2] The Court does not find that the instant dispute demonstrates the type of potential confusion found in its previous ruling where the references were previously excluded. *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 WL 4944514 (E.D. Tex. 2015).

Mojo further points to references appearing in the "Asserted Patents Summary and Background" sections of the opening and rebuttal report as improper use of unelected prior art. Dkt. No. 90-14 at 6–7. Dr. Zane's report in these sections quotes references appearing in the Asserted Patents. *See* Opening Report ¶¶ 106–338; Rebuttal Report ¶¶ 115–347. The Court does not find that quotations to the Asserted Patents which in turn contain references goes beyond the scope of general technological background or state of the art. Upon review of the disputed paragraphs, the Court further finds that Rebuttal Report ¶¶ 468, 707–708, 805, 806, 824, 826, 827 do not extend beyond describing the state-of-the-art and are outside the context of validity opinions.

Finally, Mojo disputes the use of two references specifically, the Sogabe Reference and the Paanenen Reference. Dkt. No. 90-14 at 7 (disputed paragraphs related to Sogabe); Dkt. No. 90 at 15 (discussion regarding Paanenen).

Upon review of the disputed paragraphs, the Court finds that Dr. Zane relies on the Sogabe Reference in an improper way. Sogabe is included in the section "Summary of Primary Prior Art" which purports to provide background on the references relied upon in Dr. Zane's invalidity analysis. Opening Report ¶¶ 466–478. Dr. Zane's report then proceeds to use the reference to demonstrate that certain claims of the Asserted Patents are rendered obvious in light of Sogabe. *See* Opening Report ¶¶ 1890–1903.

In light of this use, the Court strikes the use of Sogabe as an impermissible use of unelected prior art in Opening Report ¶¶ 1890–1903, 1905–1911, 1915–1930, and 1939–2083. Unlike Sogabe, Paanenen as referenced in Opening Report ¶¶ 1302, 1314 is explicitly delineated as exemplary of what was well known in the art and accordingly is a permissible use.

Extensive use of non-elected prior art patents as background state-of-the-art, as Samsung

is doing in this case, is a fraught practice. It has a proper place, at a high level, in allowing the jury to put in context the contribution of the asserted patents to the art. However, it should not be allowed as a back-door to suggest invalidity with references that have not been put through the rigors of contentions and expert analysis, not to mention exceeding the carefully negotiated numerical limits. It is not possible for the Court to know which of the references discussed in Dr. Zane's 800-page report will surface in his likely 60-minute testimony. Therefore, the Court will caution Samsung not to have Dr. Zane compare the countless unelected references to the claim limitations of the asserted patents, and will expect Mojo to make a contemporaneous objection if it contends that unelected art is being presented to the jury in a manner suggesting invalidity, and to request a limiting instruction if appropriate.

### G. Pucker Declaration

Mojo asserts that Dr. Zane's reliance on the Pucker Declaration to demonstrate public availability of the Lim Reference should be stricken due to the declaration being inadmissible hearsay or alternatively for the declaration being untimely. Dkt. No. 90 at 16–17. First, the Court does not make a decision regarding whether the declaration is hearsay as Dr. Zane is allowed to base an opinion on it regardless of that determination. *Bianco, M.D. v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014). Second, Mojo's assertion that the declaration was untimely for being served on the last day of discovery is unpersuasive as it was prior to the relevant deadline and Mojo has waited until dispositive motion briefing to raise the issue of deposing Mr. Pucker.

### H. Dr. Zane's Alternative Obviousness Combinations

Mojo asserts that Dr. Zane uses backup alternative combinations in excess of the 25 obviousness combinations allowed by the Focusing Order. Dkt. No. 90 at 17–19. Mojo points to Dr. Zane's recitation of the obviousness combinations that could render an element obvious for

9

each element. Dkt. No. 90 at 18. Samsung disputes Mojo's interpretation of the Focusing Order, asserting that Dr. Zane does not exceed the obviousness combinations elected, but rather applies the elected combinations to each element. Dkt. No. 113 at 18–20. The Focusing Order in relevant part states:

> [T]he patent defendant shall serve a Final Election of Asserted Prior Art, which shall identify no more than ten asserted prior art references per patent from among the sixteen prior art references previously identified for that particular patent and no more than a total of 25 references. For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference.

Dkt. No. 46 at 2. The Court does not find that the Focusing Order entered in this case restricts the use of the election of prior art such that Dr. Zane has engaged in impermissible analysis in his report.

### I. Reliance on Mr. Baarman

Mojo asserts that Dr. Zane's reliance on Mr. Baarman's deposition testimony should be stricken due to Mojo's assertion that Mr. Baarman's deposition testimony is hearsay. Dkt. No. 90 at 19. Mojo relies on this Court's precedent that indicates that experts may rely on depositions in forming their opinions. Dkt. No. 90 at 19 (citing *Bianco, M.D. v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014)). Accordingly, the Court, without determining whether the deposition testimony is hearsay, finds that this dispute is moot.

### III. MOTION TO STRIKE PORTIONS OF LYNNE J. WEBER'S REBUTTAL EXPERT REPORT ON SURVEY EVIDENCE (DKT. NO. 89)

Before the Court is the Motion to Strike Portions of Dr. Lynne J. Weber's Rebuttal Expert Report on Survey Evidence filed by Mojo Mobility, Inc. **Dkt. No. 89**; Dkt. No. 140 (reply in support). Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. opposed the Motion with a response and sur-reply. Dkt. No. 112; Dkt. No. 168. For the reasons discussed below, Mojo's Motion is **DENIED**.

10

### A. Objections to Conclusory References

Similar to the Motions to Strike Mr. Baarman and Dr. Zane, Mojo asserts five "suggestions" that Dr. Weber's report provides and expresses concerns regarding "false impressions" derived from these suggestions. Dkt. No. 89 at 5–9. The Court reaches the same conclusion here, that broad exclusion of portions of expert reports based on impressions and suggestions is improper where the concerns can be adequately addressed through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.

Specific to Dr. Weber's report, Mojo objects to Dr. Weber's reliance on opinions from Mr. Baarman and Dr. Zane. Dkt. No. 89 at 6–7. Mojo does not contest Dr. Weber's ability to rely on other witnesses, but rather imports its objections from other motions as a basis for finding Dr. Weber's report is unreliable, untimely, or prejudicial. *Id.* at 6–9. Accordingly, since the Court has already denied the underlying disputes regarding Dr. Zane and Mr. Baarman's testimony on this same topic, the Court does not find an independent basis present in the briefing to exclude Dr. Weber's reliance thereon.

### B. Dr. Weber's Discussions with Other Experts

Mojo asserts that Dr. Weber impermissibly relies on discussions with Samsung's fact witness Joseph Repice, and on Dr. Zane in formulating her opinions. Dkt. No. 89 at 9–11. Mojo contends that "Dr. Weber has not applied any of her own expertise to these facts or opinions and is instead just parroting back what she has been told by Repice and Dr. Zane." Dkt. No. 89 at 10. Upon review of Dr. Weber's Rebuttal Report and the identified paragraphs, the Court finds that Dr. Weber goes beyond "parroting" and adds analysis to the information learned from Joseph Repice and Dr. Zane that would be helpful to the jury. *See United Services Auto. Ass'n v. Wells Fargo N.A.*, 2019 WL 6896674, at *2–3 (E.D. Tex. 2019); Dr. Weber's Rebuttal Report ¶¶ 159 n.

193, 165, 19–24, 70, 73–74, 77, 80, 173. Accordingly, exclusion is not warranted.

Further, Mojo asserts that Dr. Weber's reliance on conversations with Dr. Zane in section 4.1 of her report is an "end run around the rules of evidence by having Dr. Weber relay opinions provided to her by another expert." Dkt. No. 89 at 10–11. The Court finds that this objection is rooted in the same assertion that Dr. Weber has not added anything to the analysis and is merely "parroting." Upon review of section 4.1, the Court is not persuaded that is true. Rather, Dr. Weber throughout section 4.1 adds to the discussions she cites, providing analysis that could be helpful to the jury. Accordingly, for this section as well, exclusion is not warranted.

### C. Objections to Dr. Weber's Methodologies

Mojo discusses Dr. Weber's analysis contained in section 4.2, pointing to various perceived flaws Dr. Weber's methodology. Dkt. No. 89 at 10–13.

Mojo contends that "scaling the results of one survey with the results of another has no relevant or acceptable basis from a technical standpoint." Dkt. No. 89 at 12. Mojo further asserts that Dr. Weber is "cherry-picking" figures to compare without providing a technical basis for doing so. *Id.* Samsung responds that "comparing surveys as a cross-check on results is proper and reliable" and that "[t]here is nothing unsound about Dr. Weber pointing out and quantifying the logical implications of the inflated nature of the Reed-Arthurs survey." Dkt. No. 112 at 13–16.

Mojo asserts that Dr. Weber erred in "summing each of her manufactured WTP estimates for each feature included in Samsung's three surveys and comparing that total to the overall price of various devices." Dkt. No. 89 at 12. Mojo contends that Dr. Weber's explanation that the "additive assumption is embedded" in Dr. Reed-Arthurs's analysis is flawed and finds fault with the second explanation as being grounded in an analogy present in paragraph 104 of the report. Dkt. No. 89 at 13. Samsung responds that "adding WTP values is inherent in the very method and

12

calculations relied upon by Dr. Reed-Arthurs" and supports the assertion by pointing to Dr. Reed-Arthurs's report. Dkt. No. 112 at 16. Samsung further responds that the analogy discussed in paragraph 104 "further illustrates the utility and reliability of using this cross-check analysis." Dkt. No. 112 at 17.

The Court finds that Dr. Weber has engaged in methodology that is sufficiently reliable and relevant to the issue before the jury such that it is appropriate for the jury's consideration. Mojo's arguments demonstrate disputes regarding credibility, as opposed to reliability, and accordingly can be properly addressed through vigorous cross-examination and presentation of contrary evidence.

### IV. MOTION TO STRIKE PORTIONS OF JULIA R. ROWE'S REBUTTAL REPORT ON DAMAGES (DKT. NO. 88)

Before the Court is the Motion to Strike Portions of Julia R. Rowe's Rebuttal Expert Report on Damages filed by Mojo Mobility, Inc. **Dkt. No. 88**; Dkt. No. 139 (reply in support). Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. opposed the Motion with a response and sur-reply. Dkt. No. 110; Dkt. No. 165. For the reasons discussed below, Mojo's Motion is **GRANTED** to the extent provided below in Sections IV (B) and (E).

#### A. Objections to Conclusory References

Mojo asserts a duplicative argument present in its other motions to strike regarding reference to "other patents and technology" and what those references could suggest to the jury. *Compare* Dkt. No. 88 at 5–9, *with* Dkt. No. 89 at 5–9. Further, Mojo reasserts the objection discussed above regarding experts relying on Dr. Zane and Mr. Baarman. Dkt. No. 88 at 6–7. Having already ruled on these objections above, and absent any objections unique to this Motion, the Court denies this section of the motion as moot. *See supra* Section II(A), III(A).

### B. Comparable Licenses

Mojo asserts a duplicative argument regarding reliance on the Powermat, VIA LA, and Phillips licensing rates, contending that references to the licenses should be stricken due to untimeliness. Dkt. No. 88 at 9–11. The Court has already determined above that the licensing rates were not disclosed, in violation of Rule 26. *See supra* Section II(C). Further, Samsung asserted "[b]ecause Dr. Rowe relies on Dr. Zane's technical comparability opinions, their opinions rise and fall together." Dkt. No. 113 at 12. Accordingly, the portions of Ms. Rowe's report which rely on the Powermat, VIA LA, and Philips licensing rates are stricken.

### C. Non-infringing Alternatives

Mojo asserts that Ms. Rowe's references to wired charging as a non-infringing alternative (NIA) should be stricken as appearing for the first time in her rebuttal report, and not being included in the relevant interrogatory responses. Dkt. No. 88 at 11. Further, Mojo asserts that Ms. Rowe's rebuttal of Mr. Bergman's reference to Samsung's NIA should "be stricken to the extent Mr. Bergman's opinion does not rely on it and Mr. Bergman does not plan to testify on it at trial." *Id.* at 12. This assertion also rests on a finding that the NIA opinion is untimely. *Id.* Samsung responds that Ms. Rowe's discussion of wired charging is in direct rebuttal to Mr. Bergman's opinions and contends that there is no requirement to disclose comparability opinions in the opening report. Dkt. No. 110 at 11–13.

After reviewing the relevant paragraphs of Ms. Rowe's report, the Court finds that Ms. Rowe's discussion of the "wired charging" NIA is in direct rebuttal to Mr. Bergman's opinions. Accordingly, the Court does not find that discussion of the NIA was untimely. *See Netlist, Inc. v. Micron Technology, Inc.*, 2024 WL 326591, at *3 (E.D. Tex. Jan. 27, 2024); *cf. Correct Transmission, LLC v. Nokia of America Corp.*, 2024 WL 1289821, at *4 (E.D. Tex Mar. 26, 2024).

Nor does the Court find that the NIA opinions were required to be disclosed in the opening report, where the opinions are being offered in direct rebuttal to Mr. Bergman's discussion of the same NIA. *Cf. Correct Transmission, LLC v. Nokia of America Corp.*, 2024 WL 1289821, at *4 (E.D. Tex Mar. 26, 2024).

### D. References to Qi Standard and WPC Policies

Mojo repeats its broad objection to any discussion of the Qi Standard and WPC policies because Mojo is not a member of the WPC. Dkt. No. 88 at 12–14. Having determined that striking any reference to the Qi Standard or WPC on this basis is improper, and that the WPC policies remain relevant despite Mojo not being a member, the Court denies these objections as moot. *See supra* Section II(D).

### E. References to LexisNexis Rankings of Qi-related Patents

Mojo asserts that Ms. Rowe's reliance in paragraph 369 of her rebuttal report on the publication "Who Leads the Qi Wireless Charging Patent Race?" should be stricken. Dkt. No. 88 at 14. Mojo contends that citation to the publication without analysis is unreliable methodology, the publication was not disclosed in response to relevant interrogatories, and the publication was not addressed in opening reports. Dkt. No. 88 at 14–15. Samsung disputes that the methodology is unreliable but does not address whether the evidence was disclosed prior to Ms. Rowe's reliance. *See* Dkt. No. 110 at 16–17; Dkt. No. 165 at 6–7.

The Court finds that Samsung has conceded that the publication was not disclosed either in response to an interrogatory or during discovery. Accordingly, the Court evaluates whether the "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court considers four factors when determining if a Rule 26 violation is "substantially harmless" under Rule 37. Those factors are the (1) importance of the evidence, (2) prejudice to the opposing party of

including the evidence, (3) possibility of curing such prejudice by granting a continuance, and (4) explanation for a party's failure to disclose. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). The party defending against Rule 37 sanctions carries the burden of showing its failure to comply with Rule 26 was "substantially justified or harmless." *See Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013).

First, Samsung's lack of response undermines any importance of the evidence and Ms. Rowe's reliance on several pieces of evidence aside from the LexisNexis publication to demonstrate the same opinion also weighs against importance. *See* Rowe Report ¶ 369. Second, Mojo is prejudiced due to a lack of opportunity to address the proffered evidence through expert review. Third, a continuance at this late stage of the case would serve to add prejudice, not cure it. Finally, Samsung does not provide an explanation for the failure to disclose. Accordingly, the Court finds that the Rule 26 violation was not substantially harmless. For these reasons, Samsung may not rely on the LexisNexis publication "Who Leads the Qi Wireless Charging Patent Race?" for any reason and Ms. Rowe's reference in ¶ 369 is stricken.

### F.  Reliance on Discussions with Samsung Witnesses

Mojo asserts that Ms. Rowe's discussions with Samsung's experts should be stricken as reliance on hearsay and due to merely "parroting back what she has been told by Repice, Kim, Dr. Zane, and Mr. Baarman." Dkt. No. 88 at 15.

Upon review of the full context of Ms. Rowe's Rebuttal Report and the identified paragraphs, the Court finds that Ms. Rowe goes beyond "parroting" and adds analysis that would be helpful to the jury. *See United Services Auto. Ass'n v. Wells Fargo N.A.*, 2019 WL 6896674, at *2–3 (E.D. Tex. 2019). While the identified paragraphs in isolation reflect information gathered

from Samsung's other experts, the full context the report demonstrates that the opinions are not just a repetition of other experts' opinions. Additionally, Mojo's assertion that the discussions are hearsay does not provide an independent reason to strike the paragraphs without further indication of what inadmissible evidence they seek to introduce before the jury. *See Bianco, M.D. v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014).

### G.  Reliance on Mr. Baarman's Report

Mojo's objection to Ms. Rowe's use of Mr. Baarman's Rebuttal Report is tied to their concurrently filed Motion to Strike Mr. Baarman. Dkt. No. 88 at 16. Since the Court has denied Mojo's Motion to Strike Mr. Baarman, on the same arguments made in the instant Motion, this dispute is moot. *See* Order re Dkt. No. 87.

**SIGNED this 23rd day of July, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE